G. Ferrer & Son, Plaintiffs and Appellees, *v.* American Railroad Company, Defendant and Appellant.

No. 4200. Argued February 8, 1928.—Decided January 23, 1929.

*M. Acosta Velarde* for the appellant. *F. B. Fornaris* for the appellees.

Mr. Justice Wolf delivered the opinion of the court.

The plaintiff claims damages to a truck by reason of a collision between it and a train of the American Railroad Company. The complaint alleged that the defendant was negligent in not having sounded an alarm or having reduced its speed at the crossing where the accident took place.

At a point about two kilometers away from Arecibo and on the side of the railroad track nearest the sea stands the Miramar Factory. To reach this factory one necessarily has to cross the railroad track and in point of fact, and so designated by the court below, a private road has arisen. As this is the only open road to the factory, all persons having business there and all the employees thereof have to cross the track, and customarily do so. There is no evidence in the record that the road is otherwise generally used by the public. A traveler along the highway between Arecibo and Hatillo going in a westerly direction makes a curve to the north in order to cross the track. The road then straightens out and runs quite a number of meters up to the track. Before crossing the track, going north, or to the left of a traveler entering the factory, the view of the track is totally or partially cut off by high shrubbery and a fence. It may be doubted if a driver of a truck could see the track until he had passed these obstructions or part of them. However, at about four meters before reaching the track all obstructions cease and a traveler has a clear view of the rails in either direction. While there is a slight difference in level before, from the arc of the curve to the track the road is entirely

level. At the crossing looking in a westerly direction, from which the train was coming, the track is level and straight for quite a great distance.

There is some conflict in the testimony as to the manner in which the truck driver approached the track. One witness, discredited by the court, said that the attempt to cross the track was made quite swiftly, and the other witnesses, as believed by the court, said that the truck driver was going along the road in a regular, even manner. The court concluded that the said truck driver was in the exercise of due care. There was no evidence that he ever stopped. On the contrary, the witnesses all agree that he did not.

The foregoing statement of facts may be subject to correction or may be deficient, but we have made it partially to indicate to appellant what it should do to aid this court. Reviewing the pleadings or summarizing the evidence is not generally what the rules mean when they ask for a brief statement of facts. What we want is a graphic account, first of the physical situation and then the essence of what happened. To be sure, it is sometimes advisable for appellant in such a statement to segregate the undisputed facts from the others, but even if he then sums up in a manner favorable to himself, provided it is not a case of mere conflict in the evidence, it helps to give the court a picture of what happened and enables it more readily to understand and define the issues. The appellant in this case found it necessary in its brief to summarize the testimony, witness by witness, and then subsequently in its argument to give some of the details.

The basic conclusion of the court was that, following the case of *Marrero v. Am. R. R. Co.*, 33 P.R.R. 201, and other authorities, the road was a public one. We feel bound to find from the uncontradicted evidence in the case, consisting of oral testimony and photographs, that the road over which the plaintiff's agent traveled was never a public one in the ordinary sense. The utmost that can be said for its public character is that the road was practically the only way of

entering the Miramar Factory, and that it was more or less continually used by persons having business with the factory and by the employees thereof. There was no evidence that any other part of the public ever traveled over the road. At the crossing the company had put up several signs saying "No Thoroughfare" (*Prohibido el Paso*).

The defendant maintained that under the circumstances there was nothing to distinguish this road from any other private crossing; that to require the company to sound an alarm at this and other private crossings would be to exact too much and to convert the trains of the company, with their continual noises, into public nuisances.

The appellee says that the defendant recognized the public character of the road by putting up a sign requiring, and by instructing, its engineers to sound a warning before approaching the factory. The road is east of the factory. The defendant says, or implies, that it took this action for the benefit of the people working at the factory. The engineer of the train testified that he had passed the place innumerable times and had rarely seen any traffic at the crossing.

The principal distinction between this case and that of *Marrero* v. *Am. R. R. Co., supra,* is that in the latter the company had recognized the public or quasi-public character of the crossing by putting up signs, "Stop, Look and Listen," thereby showing that it knew that the public generally passed. Nevertheless, we are not prepared to say that no duty arose in the defendant whatsoever, and, given all the conditions and the opinion of the court below, we shall assume, if not decide, that the road had taken on such a character that the defendant owed some duty to the persons traveling over it.

Under the authorities, as we read them, at such a crossing, which is not distinctly a public one, the duty of the railroad company is to give a signal and to use ordinary care. There is no requirement of general law that in these suburban places the trains should reduce their speed.

Yet, the principal holding of the court below was that the accident was due to the failure of the defendant to reduce its speed. The court based this holding on the Act of December 6, 1917. The particular section relied on, corrected from the Spanish text, was as follows:

"*Safety Devices for Crossings, etc.*—If a railroad company is concerned it should construct and maintain chains, gates, or other suitable protective devices, at all grade crossings of insular public roads and at all such other public crossings as the commission may designate, and subject to rules, regulations and orders of the commission, to fence in or otherwise properly guard or protect its tracks at such places as the commission may designate, so as to keep animals from entering upon such tracks; to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on street crossings, and shall use, after sunset, such lights as may be necessary and the commission may determine." Article II, section 3, subdivision (*q*), Act No. 70; Session Laws of 1917, p. 448.

The bare inspection of this Act makes it clear that the duty of reducing speed arises only at street crossings, and that the whole Act applies to crossings recognized as public roads. In no manner is the road in question a public one within the meaning of this statute.

The appellee does not seriously question the error of the position taken in the opinion of the court below, but argues that it contains more specific pronouncements of negligence and other more general considerations. We can not, however, read the opinion of the court without arriving at the conclusion that in the mind of the judge the principal negligence of the defendant was in not reducing its speed at this particular crossing as required by the cited statute. Let us assume, nevertheless, that the general finding in favor of the plaintiff is to be examined and not the erroneous conclusions of the court.

Before leaving the subject of the character of the road it is well to note, at the instance of the appellant, that the

plaintiff set up that the particular crossing was a public road. We doubt, however, if the defendant was at all misled by this averment. If the defendant owed a duty to the plaintiff that it neglected we should not consider the variance material.

There were various witnesses who spoke of the speed of the train. The climax of these statements was that the train was running at an "exaggerated" speed because it was behind time. The opinion below cited with approval the decisions of this and other courts to the effect that a high rate of speed may be maintained at non-urban places. The exigencies of public travel demand this. From examination, however, of the whole evidence we are satisfied that the defendant did not run its train at such a speed as to constitute negligence. It was decidedly not the duty of the defendant to reduce its speed to a minimum.

The best chance of the plaintiff would have been to show that the defendant, violating the humane conduct due from a public service corporation, failed to give the proper signal at this crossing. In its opinion the court said that the signals given by the defendant were too late. The evidence of both sides showed clearly that an instant before the collision the locomotive gave a series of alarm signals. The engineer himself testified that he saw the chauffeur of the plaintiff almost immediately before the accident. These signals were too late to avert the accident, and we think it was to these alarm signals that the court referred. While at least three of the plaintiff's witnesses said that they heard no whistle before the time of the alarm signals, two of these witnesses testified that they were in no position to hear the approaching whistle if blown. They did hear the alarm signals when the train was directly in front of the factory. The other witnesses of the plaintiff simply did not hear a previous whistle.

On the one hand, in this regard the rule of the law is that the negligence of the defendant must be proved by a preponderance of the evidence. *Miranda* v. *P. R. Ry., L. & P.*

*Co.,* 31 P.R.R. 738; 45 C. J. 1163 *et seq.* On the other hand,. evidence of not having heard is frequently the utmost that an honest witness can say. Nevertheless, the right to recover *prima facie* must depend on a stronger showing than was presented in this case. At a trial months afterwards all the witnesses should have been made to show that they would have been likely to hear and also to remember that the defendant's agent failed to blow a whistle in due time before reaching the crossing.

In discussing presumptions, as we shall see later, it is said that a person, when no other testimony is available, is presumed to cross the track with due care. Courts then sometimes say that a similar presumption is available to a trainman or engineer that he too performed his duty. As the defendant company made it the duty of its engineers to blow a whistle in due time before reaching this crossing, although rebuttable, the presumption arose that the due and reasonable signal was given. The witnesses and the plaintiff insist that the custom was to give the signal.

Again, however, the examination of the whole evidence convinces us that no negligence in this regard was shown by the preponderance of the evidence. Not only the engineer,. but passengers on the train whose credibility was in no way attacked, and who were apparently perfectly disinterested witnesses, testified that not only the alarm signals were given but that the approach signals were given in due time at spots immediately before arriving at the crossing where the accident happened.

Without regard to any of the alleged negligence of the defendant, we have no doubt that the proximate cause of this accident was the negligence of plaintiff's chauffeur. As we have seen, the actual crossing is on a grade where the track can be plainly seen in either direction at some meters before the moment for crossing the track arrives. If, as several witnesses of the plaintiff testified, the chauffeur was going slowly, then he would have been bound to see the train in

time if he had looked. The photographs and the evidence show that the truck collided with the locomotive. The latter shows all the signs of having been hit after its front wheels had gone by the place of the accident. It was the engineer's cab and other parts that were struck.

Although we know the finding of the court to be to the contrary, it seems to us impossible that this accident could have occurred if the chauffeur had been going very slowly as was the duty to himself and to his employer. The greater likelihood seems to be that he approached the track without taking any precaution whatsoever. Some emphasis was laid on the fact, both by the court and the appellee, that the presumption arose that the defendant was in the exercise of due care. This presumption was stated in the leading case of *Baltimore & Potomac R. R. Co.* v. *Landrigan*, 191 U. S. 461, but the authorities state and the cited case shows that the presumption is only available when there is no evidence of how the plaintiff got on the track. In other words, that the presumption yields lightly to the particular evidence in the case. The presumption that the plaintiff approached the track with due care was rebutted. In point of fact he probably never crossed the track, but collided with the train in attempting to cross.

To recapitulate, we may say that we find no negligence in the defendant, but even assuming such negligence, the accident was more directly caused by the reckless action of the chauffeur of the plaintiff. Under the conditions it may be said the causal connection between any supposed negligence of the defendant and the accident was not successfully shown. *Non constat* that the accident would have happened if the train had been going slowly immediately before the accident. *Non constat* that the plaintiff's chauffeur would not or could not have heard a signal if given.

The judgment must be reversed and the complaint dismissed.